4008. ATKINSON, receiver, v. SWORDS, by next friend.

1. In stating to the jury the contentions of the parties as contained in the pleadings, it is not good practice to refer to those contentions which do not in law constitute issues in the case; but so doing is not cause for a new trial, when, in a subsequent portion of the charge, the judge correctly gives the rules of law applicable to the real issues in the case and confines the jury to a consideration of such questions.
2. The effect of the act adopting the Code of 1910 was to re-enact into one statute all of the provisions of that code; and hence the phrase "now fixed by law," as used in § 2788 of that code, comprehends all the law in the code applicable to the provisions of that section. The employer's liability act, found in § 2782 et seq., is applicable to a suit brought, under authority of § 2788, by an employee against a Federal receiver of a railroad operated partially within this State.
3. In a suit by an employee against a railroad company for a personal injury caused by the running of a locomotive, it is error to charge the provisions of § 2780 of the Civil Code of 1910, to the effect that when the injury is shown, a presumption of negligence arises against the company; and such an error is not cured by subsequently giving the correct rule.

DECIDED MAY 22, 1912.

Action for damages; from city court of Fitzgerald—Judge Wall. January 1, 1912.

*Elkins & Wall, Bolling Whitfield, Rosser & Brandon,* for plaintiff in error.

*L. Kennedy, McDonald & Grantham,* contra.

POTTLE, J. This was an action for personal injuries, brought against the receiver appointed by a United States circuit court for the Atlanta, Birmingham and Atlantic Railroad Company. The plaintiff alleged, that he was employed as a switchman by the defendant, and that, while attempting to open the knuckle of the automatic coupler on an engine, he fell from the pilot on which he was standing, under the front of the engine; that he clung to the pilot and was dragged twelve or fifteen feet, when he attempted to throw himself from the track to avoid catching his clothing on a protruding switchpoint which the engine was approaching, but that his right leg was caught under the wheels and so crushed that amputation a few inches below the knee became necessary. The allegations of negligence were: (1) in furnishing an ordinary passenger-engine for switching purposes, instead of a regular switch-engine having a foot-board in front, upon which it was customary and necessary for switchmen to stand while the engine was moving to and fro in the yards, handling cars; (2) in failing to warn plaintiff of the danger of using the engine furnished, he being a youth only nineteen years of age and inexperienced; (3) in the failure of the engineer to keep a lookout; the engine, moving only two miles an hour, could have been stopped in time to have prevented the injury if the engineer had been on the lookout; (4) in allowing the switch-point, which plaintiff sought to avoid, to be out of repair and extend above the main rail. A general demurrer to the petition was overruled, and this judgment was affirmed by this court. *Atkinson* v. *Swords,* 9 *Ga. App.* 669 (72 S. E. 42).

When the case came on for trial after this decision, an amendment to the petition was allowed, in which it was alleged that the defendant was negligent, in that, even if the engineer was on the lookout, he could have stopped the engine in time to have prevented the injury after he saw or should have seen the plaintiff in his perilous position. The defendant's theory of the case, as developed by the testimony of the engineer and the fireman, was that the plaintiff fell while attempting to mount the pilot of the

moving engine, and was injured before the engine could be stopped. The engineer testified that he was looking directly at the plaintiff and saw him when he attempted to get upon the engine and when he fell. The plaintiff, however, in his testimony supported the material averments of his petition. He testified that he had gotten upon the engine and was in the act of turning the knuckle on the automatic coupler, when he slipped and fell in front of the engine; that he grabbed hold of the pilot and was dragged several feet, "when he attempted to throw himself from the engine" because he saw a protruding switch-point, which he thought would probably catch his clothing and drag him under the engine; that the engine was moving very slowly—about two miles an hour, and could have been stopped within six inches; that the engineer could easily have seen him and stopped the engine before he was hurt. The plaintiff recovered a verdict, and the case is here upon exception to a judgment overruling the defendant's motion for a new trial.

1. Under the former decision of this court, all of the grounds of negligence were eliminated, except the claim that the engineer failed to keep a lookout, "and because of this omission failed to promptly stop the engine when he saw, or by the exercise of due diligence should have seen, the plaintiff when he slipped from the pilot in attempting to make a coupling therefrom." It was held that as to this allegation of negligence the petition stated a cause of action. Complaint is made that in charging the jury the court stated all of the contentions of the plaintiff as set forth in his petition, in reference to the negligence of the engineer and also as to the other matters which this court had held could not be the basis of recovery. This court held that while the use by the plaintiff of the engine with a pilot, instead of a foot-board, was an assumed risk, yet proof that an improper and unsafe engine was furnished would be pertinent as illustrating the allegation of negligence charged against the engineer, and as showing an increased necessity for keeping a lookout and taking precautions for the plaintiff's protection. It was, therefore, not error to refer, in the charge, to the contention that an improper engine was furnished. It was improper to charge at length the contentions of the plaintiff which had in effect been eliminated from the case by the decision of this court. In charging the jury the judge should confine his instructions to real issues. They should not be con-

fused by a lengthy statement in reference to matters not pertinent to the real issues in the case. But this error was completely cured. It is true the judge instructed the jury that they would have the pleadings, and from them could ascertain more in detail what the contentions were, but they were later distinctly instructed in exact accord with this court's previous ruling, and it is apparent that no substantial injury could have resulted to the defendant from the recital of the plaintiff's contentions as set forth in his petition.

2. The trial judge held that the employer's liability act of 1909, codified in § 2782 et seq. of the Civil Code of 1910, was applicable to the case. Section 2788 of the code provides that the liability of receivers operating railroads in this State, "or partially in this State," for injuries to persons or property caused by the negligence of coemployees "shall be the same as the liability now fixed by the law governing the operation of railroad corporations in this State for like injuries and damages." The provisions of this section in reference to injuries to the person were codified from the act of 1895 (Acts 1895, p. 103), and in 1896 an amendment was passed, adding the words "damages to personal property" (Acts 1896, p. 63). Prior to the passage of these acts it was held that special statutory enactments fixing liability of railroads did not apply to receivers operating a railroad under orders of court, but that as to them the common law applied. *Robinson v. Huidekoper,* 98 *Ga.* 306 (25 S. E. 440). The act of Congress of March 3, 1887 (24 Stat. 554), provides that a receiver of a railroad appointed by a United States court shall operate the railroad according to the requirements of the valid laws of the State in which the property is situated, and that such receiver "may be sued in respect of any act or transaction of his in carrying on the business," without the previous leave of the court. In view of this act of Congress and of the language of code section 2788, no reason occurs to us why the provisions of that section should not apply as well to a receiver of a railroad company appointed by a Federal court as to a receiver appointed by a court of this State. The manifest purpose of the act of 1895 was to give to a cause of action for personal injury to an employee of a receiver of a railroad exactly the same status it would have had if the railroad were being operated by its own officers. But the ordinary and usual meaning of the words in the act—"shall be the same as the liability now

fixed by law"—would require that a cause of action arising for a personal injury against a receiver of a railroad should be governed by the law as it existed at the date of the passage of the act of 1895. See State v. Bossa, 69 Conn. 335; *Macon & Atlantic Ry. Co.* v. *Macon & Dublin R. Co.,* 86 *Ga.* 83 (13 S. E. 157). But, however this may be, the effect of the act adopting the Code of 1910 was to enact into one statute all of the sections of that code. *Barnes* v. *Carter,* 120 *Ga.* 897 (48 S. E. 387). When, therefore, that code was adopted and section 2799 therein incorporated, the phrase "now fixed by law," as used in the section, comprehended at least all the law in the code applicable to the causes of action referred to in the section, even though future enactments might not apply. It follows that the provisions of the liability act of 1909 were applicable to the case, and the trial judge rightly so held.

3. The act of 1909 creates a cause of action in all cases where an employee is killed or injured as the result of negligence on the part of the agents or servants of a railroad company, or negligent defects in its equipment or roadbed. If death results from an injury to an employee, the company is presumed to have been negligent, and carries the burden of proving diligence. "If death does not result from the injury, the presumption of negligence shall be and remain as now provided by law in case of injury received by an employee in the service of a railroad company." Civil Code (1910), § 2782. In *Wrightsville & Tennille Railroad Co.* v. *Tompkins,* 9 *Ga. App.* 154 (70 S. E. 955), this court had occasion to discuss the act of 1909 at some length, and especially that part of the statute quoted above. It was held that the act "did not affect existing presumptions, so far as an employee injured, but not killed, is concerned. It only varied the degree of blame by which the plaintiff's right of action would be defeated." The rule applicable under the statute to an employee suing for an injury to himself was announced to be as follows: "If the plaintiff shows that he has been injured in the running of the cars or other machinery, or by the act of a fellow servant, he may, even as to a transaction in which he was a participant, make a prima facie case by further showing either of two things: (1) that he himself did not bring about his injury by his own carelessness, amounting to a failure to exercise ordinary care; or (2) by showing that the defendant or its servants were negligent in one or more respects charged in

the petition. The company, taking at this stage the burden of reply, can defend successfully by disproving either of these propositions, or by showing that, notwithstanding it or its servants may have been negligent, the plaintiff, by the exercise of ordinary care, could have avoided the consequences."

Since the act of 1909 did not change the rule as to presumptions where death did not result, the instructions of the trial judge on this subject must be tested by the law as it stood prior to the passage of the act. The judge charged broadly the provisions of § 2780 of the Code of 1910 in reference to the general presumption of negligence against railroad companies where an injury results from the running of locomotives. That this was error requiring a new trial is settled by the decision of the Supreme Court in *Port Royal & Augusta Ry. Co.* v. *Davis,* 103 *Ga.* 579, where it was held: "In a suit by an employee against a railroad company for an injury alleged to have resulted from the negligence of a co-employee, it was error for the court to give in charge to the jury section 2321 of the Civil Code [of 1895]; and the error was not cured by the judge subsequently stating in his charge the correct rule on the subject, without calling attention of the jury to his mistake in quoting said section to them as the law of the case. *Georgia Railroad Co.* v. *Hicks,* 95 *Ga.* 301-305." In this case, as in that, the plaintiff's counsel contended that the error was cured because the court subsequently gave the correct rule. The decision in the *Davis* case is, however, authoritative and binding. The requirement of the constitutional amendment creating this court is that "the decisions of the Supreme Court shall bind the Court of Appeals as precedents." In obedience to this constitutional mandate, we direct a new trial. See, also, *Atlanta &c. Ry.* v. *Mc-Manus,* 1 *Ga. App.* 302 (5), 306 (58 S. E. 258). On another trial the jury should be instructed in accordance with the rule announced by this court in the case of *Wrightsville & Tennille Railroad Co.* v. *Tompkins,* supra, and the judge should likewise charge the law of contributory negligence, as contained in § 2783 of the code.

Other than as above indicated, no material error was committed. If the plaintiff's testimony was to be accepted as the truth of the case, a recovery was authorized under the decision of this court when the case was here before. Under that decision, it was the

duty of the engineer to keep a lookout. It is admitted that the plaintiff could have been seen. The plaintiff testifies that he was dragged fifteen feet, and that the engine could have been stopped in six inches. Under this evidence the plaintiff was entitled to recover, if himself not guilty of a failure to exercise ordinary care, whether the engineer saw him in his perilous position or not. If the engineer saw him and failed to stop, his conduct was wanton; if he could have seen him and did not, he was negligent in not doing so. In either event the plaintiff would be entitled to recover, if he himself was not guilty of such negligence as amounted to a failure to exercise ordinary care. *Judgment reversed.*