16736.   WESTERN & ATLANTIC RAILROAD *v.* REED.

1. The evidence authorized the verdict.
2. Under the facts of this case the court did not err in instructing the jury, as a matter of law, that the negligence of the driver of the vehicle was not imputable to the person for whose homicide the action was brought.
3. While it is true that the court submitted to the jury an allegation of negligence which had been stricken from the original petition, substantially the same allegation reappeared in a second count which was added to the petition by amendment. It was, therefore, not error for the court to refer to such allegation in stating the plaintiff's contentions. "It was not incumbent on the court, in its charge to the jury, to deal separately with the two counts in the petition," both counts having reference to the same transaction.
4. For the several reasons set forth in division 4 of the opinion the court did not err in failing to charge the jury as follows: "It shall be unlawful for any person under the age of sixteen years at the time, unless such minor shall have previously had twelve months' experience in the

---

Evidence, 22 C. J. p. 918, n. 72.
Negligence, 29 Cyc. p. 549, n. 50.
New Trial, 29 Cyc. p. 791, n. 15.
Railroads, 33 Cyc. p. 1093, n. 63; p. 1138, n. 28.
Trial, 38 Cyc. p. 1610, n. 95; p. 1681, n. 12.

operation of automobiles and is accompanied by the owner of the machine at the time, to propel or operate a machine on any of the highways described in this article, of this State."

5. Where the presiding judge fully charged the jury that if the defendant was not guilty of negligence causing the homicide, the plaintiff could not recover, an omission to charge, without request, that no recovery could be had if the decedent's death was the result of the negligence of the person driving the automobile was not such a failure to charge in regard to a distinct defense as to require a new trial.

6. Where the court adequately instructed the jury upon the doctrine of comparative negligence, it was not reversible error to fail to repeat the rule in connection with, or following, a further instruction that, if the plaintiff was entitled to recover, the measure of damages would be the full value of the life of the deceased son.

7. The court did not err in admitting in evidence, over the objections urged, the enlarged photographs of the decedent and his brother, both of whom were killed in the collision in question. There was no error in refusing a new trial.

DECIDED JUNE 18, 1926.

Damages; from Cobb superior court—Judge Blair. July 11, 1925.

Application for certiorari was made to the Supreme Court.

*Tye, Peeples & Tye, Morris, Hawkins & Wallace,* for plaintiff in error.

*Reuben R. & Lowry Arnold, Mozley & Gann,* contra.

BELL, J. Mrs. Nora Reed brought suit against the Western & Atlantic Railroad to recover for the homicide of her son Ralph. After a verdict in favor of the plaintiff, the defendant made a motion for a new trial, which was overruled, and the movant excepted. This is the second appearance of the case in this court. In 33 *Ga. App.* 396 (126 S. E. 393), we held that the petition set forth a cause of action and was not subject to the special demurrers interposed. We are to now determine whether there was any evidence to authorize the verdict, and whether the trial was free from prejudicial error. The allegations of the petition need not be repeated in detail, as they are shown in the previous report.

1. The first contention of the plaintiff in error is that the evidence failed to show any negligence by the railway company. The homicide was not at a public crossing, but was at one which, according to the petition, "had been established over the defendant's right of way with the defendant's consent," was "recognized" by it, and was "well traveled." We held in the former decision that it should be left to the jury to determine whether the acts and

omissions complained of constituted negligence. The ruling then made is the law of the case, and, whether right or wrong, is now binding, if the allegations were proved as laid. But the further study and deliberation which we have been able to give the case under the present writ of error has not led us to doubt the soundness of the former ruling. It finds support in the following authorities, in addition to those previously cited: *Atkinson* v. *Fountain,* 10 *Ga. App.* 307 (3) (73 S. E. 534); *Bullard* v. *Southern Railway Co.,* 116 *Ga.* 644 (43 S. E. 39); *A. C. L. R. Co.* v. *Taylor,* 125 *Ga.* 454 (54 S. E. 622); *Shaw* v. *Georgia Railroad,* 127 *Ga.* 8 (1), 12 (55 S. E. 960). And it is deemed not to be in conflict with any of the cases relied on by the plaintiff in error, including: *So. Ry. Co.* v. *Eubanks,* 117 *Ga.* 217 (43 S. E. 487); *So. Ry. Co.* v. *Flynt,* 2 *Ga. App.* 162 (58 S. E. 374); *W. U. Tel. Co.* v. *Spencer,* 24 *Ga. App.* 471 (5) (101 S. E. 198); *Kelly* v. *Hines,* 25 *Ga. App.* 186 (102 S. E. 921); *Moore* v. *S. A. L. Ry. Co.,* 30 *Ga. App.* 466 (118 S. E. 471). It is well settled, of course, that the statutes requiring certain things to be done by railroad companies at public road crossings can have no application in a case like the present, in which the crossing was not one of that character (see *McCoy* v. *Central of Ga. Ry. Co.,* 131 *Ga.* 378, 62 S. E. 297), but a railroad company may be negligent as a matter of fact where it is not so as a matter of law. That is to say, an act or omission may amount to negligence under the particular facts and circumstances, although there is no statute so declaring. The fact that the law says that the company shall do certain things at a public road crossing does not mean that the dictates of ordinary prudence might not require the doing of the same or similar things at other crossings used by the public with the knowledge and consent of the company. The petition in this case did not charge the violation of any statute, but simply alleged the omission, in certain particulars, of ordinary care, the duty of such care sufficiently appearing. We have carefully considered the evidence, and can not say that it fails to show that the defendant was negligent in one or more of the ways alleged.

The next question is, does it appear that the decedent, Ralph Reed, was so negligent himself as to bar a recovery? He was a little over ten years of age, and was at the time riding in an automobile belonging to his father and driven by his fifteen-year-old

brother Riley. The fatal occurrence was in the daytime. As the train approached from the north, it was clearly visible from the crossing for a distance of 1600 to 2000 feet. The boys were approaching the crossing from the northeast, with the railroad track to their right. The track could have been plainly seen by them from any point on the road on which they were traveling and more than 40 or 50 feet of the crossing. There was a depression in the road 40 or 50 feet from the crossing, and between this and the track was certain vegetation, and by reason of these circumstances the view might have been obstructed for a short distance. The decedent's father testified with reference to the vegetation; the depression was shown by surveys and blue prints; and Byrd Park testified: "Sitting on my porch over there and looking at that automobile as it came around that low place, I couldn't see anything but the top of it; I could just barely see the top of it; it was most out of view in that low place, but the other part, I could see it plainly until it got to that low place." Park testified also that as the train "was coming down to that crossing it was making very little noise." It was making 35 to 40 miles per hour, while the automobile was moving at the rate of only 10 to 15 miles per hour. The direction of the wind was from the southeast to northwest, or toward the train from the automobile. A street-car on a track parallel with the railroad, and also going south, had passed the crossing when the boys were within about 200 feet of it, and this may have had their attention for some time before and after it crossed. Both boys were killed, and it is not known why they did not stop in time to avoid the collision. "Due care in a child of tender years is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation under investigation." Civil Code (1910), § 3474. The want of proper care on the part of the decedent was a matter of defense (*Atlantic Coast Line R. Co.* v. *Wildman*, 29 *Ga. App.* 745 (4), 116 S. E. 858), and, under the facts appearing, this court can not say that the defense was established as a matter of law; and this is true irrespective of whether the rulings by the courts of this State to the effect that it is not negligence per se for a person not aware of the approach of a train to attempt to cross the track at a public crossing without stopping, looking, and listening, would apply with equal force where the crossing is

not at a public road. It was for the jury to determine whether the decedent should have been on the lookout, or should have warned the driver, or what, if anything, he should have done in the exercise of proper care under the circumstances; and, with the exception of inconclusive inferences, nobody knows what he did or failed to do. As we shall endeavor to show later, any negligence on the part of Riley Reed was not imputable to Ralph, and even if the jury concluded that Riley altogether failed to exercise ordinary care, they could not for that reason have found for the defendant, unless they were of the opinion that the negligence on his part was the proximate cause of the collision; and this they were not obliged to do under the evidence. There was ample evidence to support the verdict. See *Sarman* v. *S. A. L. Ry. Co.,* 33 *Ga. App.* 315 (125 S. E. 891).

2. In the fourth special ground of the motion for new trial, it is complained that the court erred in charging the jury as a matter of law that the negligence of Riley was not to be imputed to Ralph. Assuming that the plaintiff mother may have known that the boys were out together in the automobile, and that Riley was driving, she was not, according to the undisputed evidence, responsible for their going, and did no more than to silently acquiesce. Under these circumstances, even if the father had placed the boy Ralph in the custody of Riley, the negligence of the latter would not have been imputable to the former, for the purpose of this action by the mother. But it is insisted that the boys had been engaged in the joint enterprise of carrying their sisters to the homes of neighbors and that the enterprise was still in progress at the time of the collision, when they were returning to their own home. While in the testimony of the father was the expression, "they left home to carry my daughters," and in the testimony of one of the sisters was the statement, "They carried me to the McGinnis house," it is conclusive from all the evidence that Riley was the person in control of the automobile and that the younger boy had no concern in the trip except to ride. He was not a party to any enterprise, but was simply *riding as the guest of his older brother.* The court did not err in giving the charge complained of. See *Sarman* v. *S. A. L. Ry. Co.,* supra; Civil Code (1910), § 3475. The rulings made in this division will dispose of ground 6 as well as ground 4 of the amendment to the motion for new trial.

3. A further complaint made in the motion for a new trial is that the court erred in charging the jury that the plaintiff alleged that the engineer and the fireman negligently "failed to discover the automobile with its back toward the train approaching down said parallel McGinnis road towards said crossing, and ordinary care required that said engineer and fireman should keep a lookout ahead of said engine in order to discover any one who might go upon said crossing," when, as claimed by the defendant, this allegation had been stricken. It is true that the averment was stricken from the petition as originally drawn. Subsequently, however, a second count was added by amendment in which it was alleged that "the said engineer and fireman were both further negligent, in that, when the said decedent and the automobile in which he was riding were almost upon said crossing, to wit, within twenty or forty feet thereof, and with his back and side to the engine, that said engineer and fireman, in the exercise of ordinary care, in looking ahead towards said grade-crossing over the railroad, should and could have discovered said automobile and its peril before it actually got upon said crossing, and in the exercise of such ordinary care could and should have given a signal of said engine by whistle or otherwise, to warn the decedent and the driver of the automobile of the approach of the train, and said warning signal would have notified the driver and the decedent of the approach of the train, and they would not have gone upon said crossing." It will be seen that the allegation submitted in the excerpt complained of was substantially made in the second count, although it had been stricken from the petition as originally framed. The judge further charged as follows: "I haven't read the entire petition, you will have the entire pleadings out with you, and you can refer to them as often as you find necessary in the consideration of the case." He did not undertake to instruct the jury separately upon the allegations of each count, but this was not required. *Gainesville & Dahlonega Ry. Co.* v. *Austin,* 127 *Ga.* 120 (4) (56 S. E. 254) ; and see also *Atkinson* v. *Swords,* 11 *Ga. App.* 167 (74 S. E. 1093). There was no error in charging the jury as above stated.

4. Defendant contends that the court erred in failing to instruct the jury as follows: "It shall be unlawful for any person under the age of sixteen years at the time, unless such minor shall

have previously had twelve months' experience in the operation of automobiles and is accompanied by the owner of the machine at the time, to propel or operate a machine on any of the highways described in this article, of this State." For several reasons we think there is no merit in this contention. In the first place, the charge which it is claimed the court should have given appears to have been patterned from the act of 1910 (see Ga. L. 1910, p. 93, § 9), while the law in reference to the operation of motor-vehicles which was in force at the time of the transaction in question is to be found in the act of August 15, 1921 (Ga. L. 1921, p. 255, sec. 6). By the provisions of this act it is unlawful for a minor under sixteen years of age to operate a motor-vehicle upon the highways of this State, whether he is accompanied by the owner of the machine or not, and regardless of experience. In the second place, it is not unlawful for a person under sixteen years of age to operate a motor-vehicle upon a road which is not a public street or highway; and the McGinnis road on which the automobile was being operated was not a public street or a public highway. Third, the act of driving an automobile while under lawful age could not be accounted as negligence within itself, although it might perhaps be corroborative of a contention that the vehicle was improperly handled. It would be entirely irrelevant if the automobile was otherwise operated with proper care. The proposition quoted could in no view have had more than a collateral bearing on the case, and in such instances a request to charge is necessary. *Hughes* v. *Atlanta Steel Co.,* 136 *Ga.* 511 (71 S. E. 728, 36 L. R. A. (N. S.) 547, Ann. Cas. 1912C, 394); *Central of Ga. Ry. Co.* v. *Moore,* 149 *Ga.* 581 (101 S. E. 668); Freeborn *v.* Holt, 100 Okla. 50 (227 Pac. 136); Moyer *v.* Shaw Livery Co., 205 Ill. App. 273; White *v.* Kline, 119 Wash. 45 (204 Pac. 796); Scorsoni *v.* Pittsburg etc. Co., 272 Pa. 253 (116 Atl. 154).

5. The defendant excepted to the failure of the court to instruct the jury as follows: "If you find that the driver of the automobile, Riley Reed, was negligent, and that his negligence was the sole proximate cause of the death of the plaintiff's deceased son, then the plaintiff would not be entitled to recover." The judge fully charged the jury that unless the defendant was negligent in one or more of the particulars alleged in the petition and unless such negligence contributed to or caused the death of the decedent,

there could be no recovery. He charged also that the plaintiff could not recover if the decedent was guilty of negligence equal to or exceeding the negligence of the defendant. To find that the homicide resulted from the negligence of the driver of the automobile would include a finding that it was not caused by the negligence of the defendant. On the other hand, if the defendant was not negligent, or if its negligence was not the responsible cause, it was immaterial what else might have caused the decedent's death. In view of the general charge on the question of proximate cause, we do not think there was any error in the failure to give the further charge, the omission of which is complained of. Such charge would have amounted only to an elaboration of the proposition that the defendant was not liable if its own negligence was not the cause of the homicide, and did not involve such a distinct defense as to make it error to fail to give it, in the absence of request. This point seems to be controlled in principle by the decision of the Supreme Court in *Savannah Electric Co.* v. *Jackson,* 132 *Ga.* 559 (4) (64 S. E. 680). See also *Howard* v. *Ga. Ry. &c. Co.,* 35 *Ga. App.* 273 (3) (133 S. E. 57).

6. The defendant did not plead a diminution of damages because of negligence on the part of the person for whose homicide the action was brought, but all the facts pleaded were set up as a complete bar or absolute defense. See *Savannah Electric Co.* v. *Thomas,* 30 *Ga. App.* 405 (12) (118 S. E. 481). The judge, however, as he was authorized to do under the evidence, instructed the jury upon the principle of comparative negligence, to the effect that if the decedent was negligent, but less so than the defendant, and the plaintiff was otherwise entitled to recover, the jury should find for the plaintiff, but that the damages should be diminished in proportion to the negligence attributable to the decedent. Later on the court charged the jury as follows: "If you reach the conclusion that the plaintiff is entitled to recover, then it becomes your province to determine the amount she is entitled to recover. A mother may recover for the homicide of a child minor or sui juris upon whom she is dependent, and who contributes to her support. And said mother shall be entitled to recover the full value of the life of said child. This is the measure of damage if the plaintiff is entitled to recover; it is the full value of the life of

35

the deceased son, Ralph Reed, and it becomes your province to ascertain as best you can what the value of that life would have been." It is seen that in this excerpt there was no reference to the rule of comparative negligence and it was only in the portion of the charge preceding this excerpt that the rule was anywhere stated. The defendant complained in one of the grounds of the motion for a new trial that the court committed error in charging the jury unqualifiedly, as in the extract last quoted, that if the plaintiff was entitled to recover, the measure of damages would be the full value of the life of the deceased. The contention is that such charge was contradictory of the previous charge on the subject of comparative negligence and deprived the defendant of the benefit of such former charge, and was confusing to the jury in that it left them uncertain as to which of the instructions should be followed.

We can not agree with counsel for the plaintiff in error that a new trial ought to have been granted upon the exceptions now under consideration. If the defendant was liable and there was no reason to reduce the damages, the plaintiff, under the code, was entitled to recover the value of the decedent's life. Civil Code (1910), § 4424. If the defendant was liable, but if there were facts making it proper that the plaintiff's damages be reduced, it was still necessary for the jury to have some basis from which to make the deduction; and this basis was, of course, the full value of the life. Without being instructed as to this as a normal measure of recovery, they would have been unable to determine what amount to arrive at upon an application of the doctrine of comparative negligence. Even "though a particular instruction taken alone may be open to the criticism that it required a given qualification, yet where it plainly appears that elsewhere in the charge this very qualification of the doctrine laid down in such instruction was so distinctly and clearly stated as that the jury were not misled as to the true law, the giving of the instruction will not require the granting of a new trial." *City Council of Augusta* v. *Tharpe,* 113 *Ga.* 152 (2) (38 S. E. 389); *Wilson* v. *Small,* 28 *Ga. App.* 587, 592 (113 S. E. 238, 240); *Davis* v. *Whitcomb,* 30 *Ga. App.* 497 (15) (118 S. E. 488). Since the court had already instructed the jury fully upon the doctrine of comparative negligence, it was unnecessary to repeat this principle, either in connection with or fol-

lowing the further charge on the measure of damages. The excerpts set forth in the assignment of error were not contradictory, nor were they so given as to be likely to confuse the jury. The charge of the court should be considered as a whole, and when so considered each part of it will ordinarily modify every other part. In this case the jury must have understood that the charge to the effect that the plaintiff's measure of damages was the full value of the life was subject to and qualified by the previous instruction of comparative negligence, declaring the defendant's right to have the damages reduced according to the negligence, if any, of the decedent. This conclusion is not in conflict with anything decided in the following cases: *So. Ry. Co.* v. *Williams,* 139 *Ga.* 339 (3) (77 S. E. 168) ; *Ga. So. & Fla. Ry. Co.* v. *Overstreet,* 17 *Ga. App.* 629 (5 *d*) (87 S. E. 909) ; *Ga. So. & Fla. Ry. Co.* v. *Shiver,* 31 *Ga. App.* 716 (121 S. E. 696). Examination of the original record on file in each of these cases discloses that in each of them the facts were different from those in the case now under review. In the *Williams* case the court omitted altogether to charge the jury upon the plaintiff's duty to use ordinary care to lessen the damage from the defendant's negligence, although the jury were authorized to find that the plaintiff, in the exercise of such care, after notice of the rejection of the lumber, might have disposed of a major part of it at its value, and have thus materially lessened the damage. A similar situation was presented in the *Overstreet* case, the court having failed to instruct the jury at all on the subject of diminution of damages, and having even refused a request to do so. In the *Shiver* case the rule on this subject was given in charge, and, as in the instant case, all the instructions in reference thereto preceded the charge on the measure of damages; but in that case the court prefaced the charge in regard to such rule by the following statement: "I will give you in charge another proposition of law, which is called the doctrine of comparative negligence. You will consider it in connection with what I have already charged you. It should not be confused with the other principles of law charged." The implication was that the rule was to be considered only in connection with instructions previously given, and that it should not be considered in conjunction with those later given, which contained the only charge on the measure of damages. This court, in reviewing the case, therefore, held: "Where the evidence

presented the issue of comparative negligence, and the judge instructed the jury the rule in reference thereto, but thereafter charged them in such a way as to deprive the defendant of the benefit of that rule, the latter charge was error." In the present case there was no such limitation of the right of the jury to consider such rule in connection with the court's charge on the measure of damages, and the particular question now before us seems to be controlled by *Davis* v. *Whitcomb,* supra. The charge did not tell the jury that in the event they found the defendant liable, the amount of the *verdict* should be the full value of the life. The defendant might with equal reason have excepted to the charge upon the ground that it did not include an instruction to reduce the value of the life to its present cash value; and, obviously, a contention of that sort could not have been sustained, in view of the whole charge.

In another ground of the motion for a new trial the defendant complains of a certain charge of the court in reference to the use to be made by the jury of the mortality table, and to their duty to ascertain the present value of whatever amount the decedent would have earned throughout his life, in the event they found that the plaintiff was entitled to recover. We have examined the charge in the light of the criticism made of it, and do not think it fairly subject to the exceptions taken.

7.  The plaintiff tendered in evidence "two large bust pictures, oval in shape, framed, and approximately two feet long and eighteen inches wide in the center, which were identified by the witness J. C. Reed as being enlarged pictures respectively of. the deceased Ralph Reed, and of his brother Riley Reed." It was shown by the evidence that after the boys had died these pictures were enlarged from original photographs taken four to six weeks before their death. Mr. Reed, the father, testified that "they were correct likenesses of the two boys at the time of their death." Defendant's counsel objected "to these photographs being exhibited in evidence, on the ground that they were photographs taken from others; they are enlarged from other photographs;" and upon the further grounds that they were irrevelant and immaterial, "shedding no light on the issues involved," and were "things they are trying to put into the record that it is impossible to make a record of." Counsel for the defendant also suggested that it would be

possible for an artist to make an enlarged photograph altogether different in appearance from the original. The court overruled all the objections and admitted the "pictures" in evidence. While it is true that an enlarged photograph might, from design of the artist or other reason, be entirely different in appearance from the original of which it is a purported reproduction, the evidence shows that this was not so as to the particular photographs. On the other hand, "they were correct likenesses of the two boys at the time of their death." It was not a good ground of objection that the photographs could not be put into the record, or that no record of the same could be made. It frequently happens in the trial of cases that clothing, weapons, and even liquors, are introduced in evidence although no adequate record can be made of them. Both photographs were not irrelevant and immaterial, for, if they were correct likenesses, the one of Ralph might have aided the jury in determining his capacity to exercise care and diligence on the occasion of his death. The jury also had for their consideration the question of the capacity of the boy Ralph to labor and contribute to his mother's support, and the photograph of him might have enlightened the jury in some degree upon this issue. There was no separate objection to the photograph of Riley; and if the other photograph was admissible, the objection to *both* was properly overruled. As to the mere fact that the photographs were enlarged, "It is no objection to the admissibility of a photograph that it is enlarged, showing the subject or object magnified, where it does not have a tendency to mislead." 22 C. J. 918, § 1121. There was no objection that for any reason the photographs were prejudicial or that they tended to mislead the jury. We see no error in the court's ruling. The above disposes of all grounds of the motion for new trial which it is necessary to notice in detail. The court did not err in overruling the motion.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*