33710.   STORY *v.* HOWELL.

Decided March 18, 1952.

*Randall Evans Jr.,* for plaintiff.

*Knox & Neal, John F. Hardin,* for defendant.

WORRILL, J. (After stating the foregoing facts.) ■ Paragraph 11 of the petition alleged: "That plaintiff had notified defendant of her claim against him, and although he agreed to have the land line run by the land processioners of Columbia County, Georgia, on the 19th day of August, 1950, and to share the expense, and allow said land line as thus run to determine the matter, including the matter of damages, defendant called plaintiff's attorney, Randall Evans Jr., on telephone on August 22, 1950, and stated that unless a Mr. Dixon, whom defendant has been employing to survey for him, should be employed as the surveyor for said land processioners, that he would not go forward with his agreement, nor share in the expenses, nor have any part in the running of the said land line between said two tracts by the land processioners of Columbia County, Georgia; and although plaintiff's counsel advised said defendant that he had already been to Appling and secured the names of said land processioners, preparatory to having said land line run by them, under said agreement, nevertheless said defendant said he would not go into it without said surveyor above named. The said Dixon was not a resident of Columbia County, nor was he the official surveyor used by the land processioners of said district of Columbia County, Georgia." Paragraph 12 alleged: "That defendant has been stubbornly litigious in the premises and has forced plaintiff to employ counsel to protect her rights in securing possession of her land and mesne profits, and he is, therefore, liable to pay a reasonable counsel's fee in the sum of Three Hundred Dollars ($300)." Paragraph 12-A, in aid of the allegations immediately preceding, alleged: "That the conduct of said defendant in trespassing on the lands of plaintiff, and in occupying same wrongfully, was done wilfully and wantonly, and the said defendant knowingly disregarded the rights of plaintiff in so doing."

The defendant demurred "generally and specially" to paragraph 11, on the ground that the allegations were prejudicial, irrelevant, and immaterial, in that they did not pertain to the issue in the case and were obviously calculated to influence the jury against the defendant. The allegations in paragraph 12 were "generally and specially" demurred to on the ground that nowhere was it alleged how or in what manner the defendant had been litigious, and no facts were alleged to authorize the recovery of attorney's fees. The court sustained the demurrers, and the plaintiff excepts.

In the Code, § 20-1404, it is provided: "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." While the plaintiff argues that it is shown that she was put to unnecessary trouble and expense by the defendant, in that he withdrew from his promise to have the land line run and share in the expense, we do not find such allegations in the petition. It is true that it is alleged that the defendant changed his mind and would not go forward with the plaintiff in having processioners establish the land line, and that the plaintiff's counsel informed him that he had already been to Appling (presumably in Columbia County) and secured the names of the land processioners of the county, but it is not specifically shown that this involved the plaintiff or her counsel in any expense whatsoever. Furthermore, the defendant's consent was not necessary to a processioning proceeding by the plaintiff if she preferred to take that course. In fact, all the allegations were foreign to the issue in the original petition, which was an action in ejectment; and the only effect of the allegations, if any, was to prejudice the jury on the real issue between the parties. Paragraph 12-A, even if taken in connection with paragraph 12, does not show wherein the defendant has been litigious. So far as appears from the petition, this is the only litigation between the parties in the premises, and certainly the defendant had the right to contest all the issues raised by the plaintiff in her suit. No error is shown.

■ The plaintiff excepts to a judgment of the court overruling her motion to dismiss the defendant's original answer and second

answer, because he did not therein admit possession of the land for which ejectment was brought in the original petition, but which feature went out of the case when the defendant later filed a disclaimer and the court decreed title in the plaintiff. It is contended by the plaintiff in error that, under the Code, § 24-3322 (now § 24-3344 in the supplement to the Code), a specific admission is necessary in order to defend in an action of ejectment. The provisions relied upon represent a rule of the superior courts of the State, which acquired the dignity of a statute by the adoption of the Code. The language first appeared in the Code of 1895 as § 5656, and then as now read as follows: "No party shall be permitted to defend an ejectment cause, or an action of complaint for land, who does not admit that he was in possession of the premises in dispute at the commencement of the action." Standing alone, the section might have the meaning contended by the plaintiff in error, but, for reasons now to be stated, an express admission of possession is not required. There existed at common-law ejectment a "consent rule," by way of a fiction, that the defendant admitted "lease, entry and ouster." This common-law rule was placed in the Code of 1863 as § 3277, and is now Code § 33-111, reading as follows: "The consent rule in ejectment shall always be considered as filed, and admits lease, entry and ouster. The fictitious forms in pleading in ejectment shall be sufficient." Thus it will be seen that the section just quoted does not expressly state that the defendant, under the consent rule, also admits possession. However, in *Elliott v. Robinson*, 192 *Ga.* 682 (1) (16 S. E. 2d, 433), it was held: "The consent rule in common-law ejectment required only that the defendant admit lease, entry, and ouster. [Citing.] In this State that rule was extended by rule adopted at the convention of the judges of the superior courts in 1879, Powell on Actions for Land, 85, § 58, so as to require the defendant to admit also that he was in possession of the land described in the petition at the commencement of the action. [Citing.] By its inclusion in the Codes of 1895, 1910, and 1933 (§ 24-3322), which were regularly adopted by act of the legislature, the consent rule as extended assumed the additional qualities of a statute. [Citing]." Under the above-mentioned authorities, it is not necessary in a statutory action of ejectment, as here, that the defend-

ant expressly admit possession in order to defend, but the consent rule now charges the defendant with admitting possession and is deemed filed when a defense is made. The objection is without merit.

While in *Horn* v̄. *Towson,* 163 *Ga.* 37 (4) (135 S. E. 487), it was said that the consent rule applied only in the fictitious form in an action of ejectment, in *Horton* v. *Wilkerson,* 192 *Ga.* 508 (5) (16 S. E. 2d, 8), it was said that such statement was evidently an inadvertence and also obiter in so far as it may have excluded a statutory action of complaint for land, since the action there was in equity.

■ In counts 1 and 2 the plaintiff alleged: "That said defendant cut timber from said lands immediately west of said two streams [forming the dividing line] and on plaintiff's side, and manufactured same into lumber, and of the value of One Thousand Dollars ($1000), and occupied and used the lands as his own. The tract of land occupied by the defendant and used and claimed as his own, which belongs to plaintiff, is a tract of 50 acres, more or less, immediately west of said Spring and Hickory Branch at the boundary line between said two tracts of land of plaintiff and defendant." The defendant answered as follows: "Answering paragraph eight (8) of plaintiff's petition, this defendant expressly denies that he has cut any timber from lands belonging to the plaintiff or has otherwise injured or damaged the plaintiff in any respect. The remaining allegations of said paragraph are so vague, indefinite, and uncertain as to the tract of land occupied by this defendant and used and claimed as his own, as to require no factual answer, either as to possession or disclaimer. But if it be held that answer is required, then this defendant admits that he is, at the present time, in possession of the property lying north of Spring Branch and west of Hickory Branch included in lot No. 4 as shown on said plat, and that he bona fide claims the absolute unqualified ownership thereof. Except as specifically admitted, the allegations of said paragraph are denied and strict proof demanded thereof." The plaintiff demurred as follows: "She demurs to paragraph eight (8) of the answer upon the following grounds, to wit: A. Same is not responsive to the allegations of paragraph eight (8) in the original petition. B. Same is vague and indef-

inite, and defendant should be required to specifically answer the allegations therein made." It is contended by the plaintiff in error here that the answer should have been stricken on demurrer because the defendant did not expressly admit possession. Whether or not the answer was subject to this demurrer or the defendant was relieved from such admission because, as he asserted, the description was too vague, indefinite, and uncertain, it is unnecessary to decide, since the subsequent disclaimer by him (after a plat as by amendment attached to the petition) and a decree of title in the plaintiff rendered the question of possession moot. Furthermore, if it be said that the description was sufficient in ejectment, as contended by the plaintiff in error, the defendant would be charged in law, under the consent rule, as admitting possession.

■ The first special ground of the motion for new trial, numbered 4, complains that the court erred in misstating a material contention of the plaintiff. She alleged not only that the defendant had cut certain timber from her land, but also that "while cutting said timber allowed fire to burn over the lands of plaintiff of which he was in possession, and damaged same as will be hereinafter shown." The court charged the jury that the plaintiff contended that "certain other land was burned over and damaged" by the defendant. It is asserted that the plaintiff was not contending that "other land was cut over," but only that occupied by the defendant, and that the effect of the charge was to leave the jury under the impression that the fire damage sought was limited to that on the land and timber growing on lands other than that on which the defendant was alleged to have cut timber. While the charge was inapt as to the contentions of the plaintiff, it can not be said to have been harmful error. After stating the contention mentioned, the court charged the jury as follows: "I charge you, gentlemen of the jury, if you find that the plaintiff has suffered damages in this case, and if you further find that said damages are the result of a trespass, then the plaintiff would be entitled to recover such damages as you may believe the plaintiff suffered, irrespective of whether negligence be shown or not. A trespasser is liable for whatever damage is done to one against whom he is trespassing during such trespass and as a result of said trespass." This charge instructed the jury that,

if the defendant was a trespasser, he would be liable in damages whether the damage was caused by fire or other means, and it can not be reasonably said that the jury was given the impression that the defendant would not be liable for any damage, by fire or other means, as a trespasser on land actually occupied by him. Furthermore, there was evidence which would have authorized the jury to find that the fire damage complained of was not caused by the defendant or by anyone acting for him, and, hence, the charge was harmless in view of the verdict in favor of the defendant.

Special ground 5 complains that the court erred in charging the jury that the plaintiff contended that she was entitled to nominal damages for the trespass upon her property, thereby causing the jury to think that she was not contending for substantial damages as she in fact was contending. Whether or not, as urged by the defendant in error, the inaccuracy was cured in a subsequent portion of the charge of the court, no reversal is required for the following reasons: "Verdicts shall have a reasonable intendment, and shall receive a reasonable construction, and shall not be avoided unless from necessity." Code, § 110-105; *Simmons* v. *Rarden*, 9 *Ga.* 543 (1); *Steed* v. *Cruise*, 70 *Ga.* 168 (9 a); *Rowland* v. *Gardner*, 79 *Ga. App.* 153, 158 (53 S. E. 2d, 198). A verdict shall be construed in the light of the pleadings and the evidence. *Short* v. *Cofer*, 161 *Ga.* 587 (1) (131 S. E. 362); *Carawan* v. *Carawan*, 203 *Ga.* 325 (4) (46 S. E. 2d, 588). The evidence was uncontradicted that the defendant cut some timber from lot 103. Unless, however, the jury reached the conclusion that at the time of the trespass the plaintiff had sold to Marvin Hawes the trees which were cut, they could not consistently have returned a verdict in favor of the defendant and it could not be upheld. Since the jury did return such a verdict—as they were authorized to do, as hereinafter shown— the question of what kind of damages the plaintiff sought becomes immaterial and the ground of complaint is without merit.

Special ground 6 of the motion for new trial complains that the court erred in charging the jury as follows: "Now, gentlemen of the jury, the defendant comes in and denies that he is claiming any of the plaintiff's property and filed a disclaimer, [a] but he admits that by error he got over and cut certain trees

on the plaintiff's land. [b] He contends further that said trees had been sold to a third party and that the plaintiff is not entitled to recover for that. [c, d] He denies that he is liable for the damages cause l by the fire because, as he contends, he didn't set out the fire and he wasn't negligent in doing so, and, therefore, he is not liable, and that he would not be liable to the plaintiff for the trespass unless you believe that he cut them off while they were owned by the plaintiff. [e] Now, gentlemen of the jury, he contends that he is not in any wise liable for punitive damages because he, in good faith, cut the trees and it was not a wilful or total disregard of the consequences of his act that the trees were cut, that they were bona fide cut, and that if he is liable to anybody he is liable to the owner of them and not the plaintiff." It is contended that the excerpt [a] placed the defendant in a more favorable light than he was entitled to under his pleadings and evidence, a part of which is set forth in the special ground; that the excerpt [b] was unsupported by any pleading or evidence; that the excerpt [c, d] refers to a contention not made by the defendant in his pleadings or evidence; that the language, "and that he would not be liable to the plaintiff for the trespass unless you believe that he cut them off while they were owned by the plaintiff," confuses the question of cutting the timber and the burning of the premises and tended to cause the jury to believe that the defendant would not be liable for the fire damage unless he cut certain trees off while they were owned by the plaintiff, whereas he would be liable for the fire damage regardless of the cutting of the timber; and that the excerpt [e] was error because not supported by any contention of the defendant in his pleadings or evidence. It is true, as pointed out by the plaintiff in error in this ground, that the defendant denied the allegations of the original petition as to trespassing upon lot 3, that he testified that he had not, through Jim Porter, cut over the line as shown to him and to Porter by a certain negro, Henry Murray (supposed to be familiar with the line), though he admitted that some timber had been cut by Porter, testifying, however, that he did not know where the plaintiff's land was, as he had never seen a deed to it, and that he did not admit that any of the cut timber came off of her land, and that the line, beyond which no timber had been cut, was

pointed out to him by the negro, Henry Murray, whom the plaintiff had authorized to show the line to him. It is further true that the defendant in his answer stated that he made no claim to lot 3, but claimed lot 4, and that he later filed a formal disclaimer (after a plat was by amendment attached to the petition) ; that the defendant in his answer denied that he allowed fire to burn over the plaintiff's land and damage the same, and he did not set up in his pleadings a specific denial of not being negligent. As against the above-stated contentions of the plaintiff as to certain parts of the record, it is shown that on the trial of the case there was evidence that, while the defendant cut some trees, he did not cut over the line shown to him by Henry Murray, and that thus there was no overt intention to cut another's trees, though in fact he was beyond the true line of his land lot 4; that this negro testified that his father, who knew the line, before his death showed him the line, and that this line was the line he pointed out to the defendant and to Jim Porter who cut the timber, and that he knew of his own knowledge that no timber was beyond the line he showed. The defendant testified that Jim Porter did not cut beyond such line, and Porter so testified. These witnesses were put up by the defendant, and by them he was entitled to show a lack of intention to cut any timber beyond the line pointed out to him and thus trespass upon another's property. The fact that such cutting was not admitted in the answers of the defendant before the plat was by amendment attached to the petition does not militate against his right to show by testimony on the trial of the case that his trespass was by error or misunderstanding. As his answer was amendable in that respect to meet the evidence, it was not error for the court to charge as complained of. See *National Life & Accident Insurance Co.* v. *Lain*, 51 *Ga. App.* 58 (3) (179 S. E. 751).

The evidence also raised an issue as to whether or not the trees, at the time of the cutting, belonged to the plaintiff, and hence the excerpt [b] was not error. While the plaintiff testified that she did not sell the timber until May 25, 1950, the deed which was introduced in evidence showed the date of conveyance to Marvin Hawes as May 24, 1950, and Jim Porter, who cut the timber, testified that it was all done on May 26, 1950. This

testimony of Porter was adduced at the instance of the defendant, who also put in evidence the deed of conveyance of the timber, and amounted to a contention that the timber had been sold by the plaintiff before it was cut by the defendant. If the jury accepted the evidence as true, they were authorized to find against the plaintiff, and the excerpt was not error for any reason assigned.

The excerpt [c, d] was authorized by the evidence, and the language, "and that he would not be liable to the plaintiff for the trespass unless you believe that he cut them off while they [the trees] were owned by the plaintiff," was clearly a reference to the trespass of cutting timber and not fire damage, and did not, as contended in that ground of the motion, confuse the fire damage with the cutting of timber.

The excerpt as to "punitive" damages, if error, was harmless to the plaintiff because she would not be entitled to such damages where, as here, the jury did not award any damages whatever to her, and the assigned error does not show any bias or unfairness generally in the charge, or some other bearing on the case besides the measure of damages, in which event the particular reason for the exception must be specified. *Enright* v. *City of Atlanta*, 78 *Ga.* 288 (2); *Lewis Manufacturing Co.* v. *Davis*, 147 *Ga.* 203 (4) (93 S. E. 206). No error is shown in this ground of the motion.

Special ground 7 complains of the refusal of the court to give a timely written request to charge, as follows: "I charge you that, although the plaintiff has alleged a wilful trespass, if the evidence in this case shows a simple trespass and not a wilful trespass, the plaintiff would still be entitled to recover of the defendant." An examination of the charge shows that substantially the equivalent of such language was given in charge by the court, viz., "I charge you that although the plaintiff has alleged a wilful trespass, if you find from the evidence in this case that a simple trespass was committed and not a wilful trespass the plaintiff would still be entitled to recover of the defendant whatever amount that you determine she has been damaged by the negligence and trespass of the defendant." The court also charged: "So I charge you, gentlemen of the jury, if you find that the plaintiff has suffered damages in this case, and if you

further find that such damages are the result of a trespass, then the plaintiff would be entitled to recover such damages as you may believe the plaintiff suffered, irrespective of whether negligence be shown or not. A trespasser is liable for whatever damages are done to the one against whom he is trespassing during such trespass and as a result of said trespass." No error is shown in this ground.

Special ground 8 complains that the court erred in charging the jury on a contention not made by the defendant in his pleading or evidence, as follows: "Now, gentlemen, I charge you that standing timber is realty and may be owned and possessed by one person while the soil belongs to another, and that conveyances of standing timber are treated as deeds to realty, and are to be executed with the same formality and may be recorded as such, and, in fact, have all the incidents of ordinary deeds to realty. Now, gentlemen, in this connection I charge you further that, if you find from the evidence which has been presented in this case that the plaintiff had sold her growing timber on her lands to some person, and that after the date of such sale you find that such timber was wrongfully cut by the defendant, then, in that event, you would not be authorized to render a verdict in favor of the plaintiff as damages for any timber to a third person. I charge you further that the plaintiff must recover on the strength of her own title and, therefore, if at the time the timber was cut an outstanding title be shown superior to that of plaintiff she can not recover, although it be shown that the defendant had no title to the property." This ground is controlled adversely to the movant by what has been said hereinbefore as to the propriety of a charge on evidence introduced without objection.

Special ground 9 complains of the charge of the court on "punitive" damages. As hereinabove shown, the jury awarded no kind of damage to the plaintiff, and hence, even if the charge could be said to be error for any reason, it was harmless. *Enright* v. *City of Atlanta,* supra; *Lewis Manufacturing Co.* v. *Davis,* supra.

The last special ground of the motion for new trial, numbered "11," complains that the court erred in charging the jury as follows: "Gentlemen of the jury, take this case and determine

from the facts and circumstances and the law I have given you in charge and arrive at the truth, and when you arrive at the truth let your verdict speak that truth. If you find for the plaintiff, the form of your verdict would be 'We, the jury, find for the plaintiff so many dollars and so many cents,' as you so find. Now, gentlemen of the jury, if you find for the defendant, the form of your verdict would be 'We, the jury, find for the defendant.' " It is contended that the charge was error for the following reasons: The petition as amended was in two counts, count 2 being for damages for the cutting of certain timber and injury to the plaintiff's premises by fire and otherwise damaging the same, and count 3 being for punitive or, more correctly speaking, exemplary damages, each of which counts involved a different measure of damages. It is contended that the charge should have instructed the jury to return a verdict with reference to each count, and that as given it was the equivalent of informing the jury that they would have to find for the plaintiff on both counts in order to return a verdict in her favor, whereas, under the pleadings and evidence, the jury could have returned a verdict in her favor on count 2 and against her on count 3 and vice versa.

The cases cited by the plaintiff in error relate to instances where there were two dissimilar transactions, contracts or torts. In the present case, although the measure of damages sought in count 2, for the cutting of timber, etc., was different from that sought in count 3, for "punitive" damages, there was only one transaction complained of against the defendant, the trespass upon the plaintiff's alleged property with cutting of timber, fire damage, etc. In such circumstances, it was proper for the jury to return a general verdict for or against the plaintiff, and it was not reversible error to charge as complained of. The court charged the jury as to damages for trespass, intentional or innocent, and as to "punitive" damages, and it could not reasonably be said that the jury was confused in returning its verdict. *Zemurray* v. *Mansor*, 28 *Ga. App.* 602, 604 (112 S. E. 296); *Western & Atlantic R. Co.* v. *Reed*, 35 *Ga. App.* 538 (3) (134 S. E. 134); *Atlanta Life Ins. Co.* v. *Rogers*, 57 *Ga. App.* 785 (196 S. E. 239); *Rowland* v. *Gardner*, 79 *Ga. App.* 153, 157 (53

S. E. 2d, 198); *Gainesville &c. Ry. Co.* v. *Austin,* 127 *Ga.* 120 (4) (56 S. E. 254).

■ The plaintiff testified as to the sale of the timber to Marvin Hawes: "That is my signature on that deed. I said I sold it to Mr. Hawes on the 25th of May [1950]. I think that is correct. . . I signed that deed in your office [that of Mr. Neal, counsel for the defendant]. You dated the deed, I remember that."

Jim Porter, who cut the timber for the defendant, testified: "I recall when I went in there and cut that timber and went across the branch. I went across that branch on the 26th day of May, Friday. From this calendar for the year 1950 which you hand me the 26th day of May falls on Friday. We started cutting logs in there just before noon, well, in the morning part of the day. We went over there in the morning. We cut trees over there. . . We did not go any further south of the branch than that Henry Murray pointed out to us. We left out from that part south of the branch that afternoon. . . We did not go back any other time. We took all the timber out with us that we cut in there that afternoon. The reason I know that it was the 26th day of May is because it was on my blank Saturday. I pay off each two weeks and I had been rushing getting up my vegetables and oats and hay and I wanted to get back close to home. . . A fire came in there and got inside next to the mill before we ever started operating the mill, before we ever built any fire there. I did not start any fire on there on Mr. Howell's place other than my slab pile. A fire did come in there. I do not know of my own knowledge where the fire started. The fire came from kind of a southeast direction. I don't know whose land this is back over on this side here. I have just been told it was the Crawford place. . . The day before there was a fire burning. . . On the 26th of May, on Friday, I crossed over that branch for the first time and cut some sixty or seventy logs, and I don't know exactly how many, and I had not cut them until that time."

Marvin Hawes testified: "In May last year I had occasion to purchase some timber from Miss Gaines Story [the plaintiff]. The deed you hand me is the timber deed under which I bought it. The deed is from Miss Gaines Story to me. This timber deed is dated May 24, 1950. That is the date on which this

transaction between me and Miss Gaines Story was consummated. . . When I looked at the timber on May 17th the fire had already been over it and I still offered her $5000 for the timber."

The deed from the plaintiff to Marvin Hawes covering the sale of timber in question was introduced in evidence by the defendant, and the date of the deed shown by the record is May 24, 1950. The above-stated evidence was sufficient to authorize the jury to find that, at the time of the cutting of the timber for which damages were sought, the title had passed to Marvin Hawes and that, therefore, the plaintiff was not entitled to any recovery whatever. The jury was further authorized to find that the fire which damaged the premises, as claimed by the plaintiff, was not caused by the defendant or anyone acting for him, but it is not deemed necessary to encumber the record further by setting out all the evidence in that respect. The general grounds are without merit.

■ Error is assigned on the judgment overruling the plaintiff's motion to retax the costs, all of which had been assessed against her. It is contended that, as the defendant did not file a disclaimer of title until January 29, 1951, he should be taxed with costs up to that date. Without entering into a discussion as to whether or not the defendant unduly delayed filing his disclaimer, under the facts shown by the record hereinbefore stated, it is sufficient to say that in an action at law there can be no apportionment of the costs. Code, § 24-3401; American Nat. Bank of Macon v. Commercial Nat. Bank of Macon, 268 Fed. 688 (1). See also Lowe v. Byrd, 148 Ga. 388, 393 (96 S. E. 1001); Hicks v. Atlanta Trust Co., 187 Ga. 314 (200 S. E. 301). The rule is different in equity. Code, § 37-1105; Grizzard v. Ford, 167 Ga. 531 (3) (146 S. E. 126).

Judgment affirmed. Sutton, C.J., concurs. Felton, J., concurs specially.

FELTON, J., concurring specially. I concur in the judgment and in all of the divisions of the opinion except division two. It seems to me that it is absolutely immaterial whether the defendant admitted possession or not in the answer to the ejectment suit. Irrespective of that question—and I do not disagree with the legal proposition stated as to the admission of possession—I do not think that, whatever the defendant did or did not

do as to the ejectment suit, the plaintiff can amend such an action by adding two counts for different causes of action, and contend that as to them the defendant had no right to file an answer to them because he did not admit possession in the ejectment action.